**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| MICHAEL CAMPBELL, | : | |
| Plaintiff, | : | Case No. 3:07CV019 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | :<br><br>: | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS**[1]

**I.  INTRODUCTION**

Plaintiff Michael Campbell has worked various jobs such as meat cutter, laborer, and nursing assistant. His work involved cutting meat, building furniture, and helping the elderly. (Tr. 86).

In June 2001 Plaintiff injured his back in a car accident, sustaining both a low-back injury and a whiplash-type injury. (Tr. 190, 301-02). In late 2001 he was involved in a second car injury that again caused a whiplash-like injury. (Tr. 302). Since these accidents, he has experienced daily and chronic back pain.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff was laid off his last job in March 2002. (Tr. 302). He has not worked since due to his back problems. (Tr. 74, 302). He therefore sought assistance from the Social Security Administration by filing an application for Disability Insurance Benefits (DIB). *See* 42 U.S.C. §423.

After initial administrative denials of his DIB application, Administrative Law Judge (ALJ) Thomas R. McNichols II held a hearing and later issued a written decision concluding that Plaintiff's medical problems did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 18-27). The ALJ's non-disability determination and resulting denial of DIB became the final decision of the Social Security Administration. Such decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #7), Plaintiff's Reply (Doc. #8), the administrative record, and the record as a whole. Plaintiff seeks an Order reversing the decision of the ALJ or, at a minimum, an Order remanding his case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II.  ADDITIONAL BACKGROUND

When Plaintiff stopped working as a meat cutter, his age (38 years old) placed him in the category of a "younger person" for social security purposes. *See* 20 C.F.R. §404.1563(c). He has a high school education and one-year of technical vocational

2

training. (Tr. 80).

Plaintiff's primary medical problem is chronic pain. (Doc. #6 at 3). During the ALJ's hearing, Plaintiff testified that he had significant pain in his cervical, thoracic, and lumber spine saying, "I hurt from head to toe just about." (Tr. 304, 308). He estimates his pain levels on a one-to-ten scale at nine and ten. (Tr. 313).

Plaintiff explained to the ALJ that if he twists too fast or makes any sudden movement, his "lower back goes out at the drop of a dime." (Tr. 304). Back pain limits his ability to walk just fifty yards before he needs to sit. (Tr. 316). He can stand for only two or three minutes before his "lower back starts knotting up." *Id*. He can sit in a chair for five to ten minutes. If he shifts his weight, he can remain sitting for one-half hour. (Tr. 316-17). Plaintiff further testified, "My doctor doesn't want me lifting over two pounds or carry[ing] over two to five pounds." (Tr. 317).

Plaintiff's medical problems also include numbness in his legs, particularly if he sits in one position. (Tr. 308). He also suffers from depression and anxiety. (Tr. 305). Plaintiff described feeling depressed, hopeless, "very angry at everything," and unsafe when he leaves his home. (Tr. 309). He takes Prozac for depression and Klonopin for anxiety. He has not undergone counseling. (Tr. 305, 312). He also takes a blood pressure medicine and a psychotropic medication for pain. (Tr. 312). His medications make him forgetful, very drowsy, and cause him to lose his appetite. *Id*.

Plaintiff also has carpal tunnel syndrome causing him pain in both hands and wrists. Because of this, he has difficulty grasping things. He explained that he cannot

3

"get a good grip on anything." (Tr. 306). For example, in order to write a letter, he must do so in two or three sections because he cannot hold a pen for more than five minutes. (Tr. 306). His pain levels from carpal tunnel syndrome range from seven to eight on a ten-point pain scale. (Tr. 314-15).

Turning to Plaintiff's medical records and other evidence in the administrative record, the parties have provided informative and detailed descriptions of this evidence. *See* Doc. #6 at pp1-10; Doc. #7 at pp. 1-9. In light of this, and upon consideration of the complete administrative record, there is no need to reiterate or expand upon the parties' descriptions. Still, a discussion of the two medical sources of record will help frame further review.

Plaintiff relies on the opinions of Dr. Saleh, his long-time treating pain management specialist. Dr. Saleh reported the following in January 2005:

> Mr. Campbell's current medications include Oxycontin, Roxicoderm, Lidoderm patches, Remeron Sol Tabs, Neurontin, Prozac, and Flexeril, to decrease pain and increase functional capability of life. Treatment this patient has completed includes chiropractic therapy, use of back support/brace, TENS unit, therapeutic lumbar epidural steroid injections, and concurrent medication therapy.
>
> Mr. Campbell has physical limitations in mobility and functional capacity as a result of his condition. The patient has chronic pain and dysfunction due to his condition and this is permanent and will continue into the future. It is my opinion, that with all reasonable medical probability, scientific and medical certainty..., Mr. Campbell requires further treatment in the future in the form of medical therapy, occupational therapy, rehabilitation therapy and other treatment modalities that could be available in order to help increase his function and quality of life. Without this treatment, his condition will continue to progress and he will remain disabled as a result of this chronic debilitating disease of which he has

suffered as a result of his injury on June 24, 2001.

(Tr. 218).

Plaintiff argues that objective test results from MRIs and x-rays as well as many clinical findings by Dr. Saleh support his opinion that Plaintiff cannot perform even sedentary work.[2] (Tr. 164-65, 217-23). Plaintiff points out that Dr. Saleh provided the only examining and treating medical source opinion regarding Plaintiff's physical impairments; other medical source opinions were provided by non-examining, reviewing physicians (Drs. Hutson, Holbrook, and Rath).

The Commissioner relies in part on the opinions of Dr. Hutson, the medical expert who testified during the administrative hearing. Dr. Hutson concluded that Plaintiff could perform sedentary work subject to several restrictions: a sit/stand option; no repetitive twisting; no concentrated exposure to cold, heat, wetness, humidity, vibration, heights, or hazardous areas; only occasional climbing of ramps and stairs; and no climbing ladders, ropes, or scaffolds. (Tr. 327-28). Dr. Hutson also testified that Dr. Saleh's opinion about Plaintiff's work limitations "isn't backed up by objective medical evidence of record." (Tr. 329).

### III. "DISABILITY" AND ADMINISTRATIVE REVIEW

The term "disability" – as defined by the Social Security Act – has specialized

---

[2] Sedentary work is the least physically demanding type of work under the Social Security Regulations. *See* 20 C.F.R. §404.1567(a)-(e). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." §404.1567(a).

meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).[3]

Social Security Regulations require ALJs to resolve whether a claimant is under a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments ("the Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

---

[3] Other DIB eligibility requirements are not at issue in this case. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

The ALJ found in Step 2 the Plaintiff suffers from severe impairments of vertebrogenic disorders of the cervical and lumbosacral spines, a history of depression and pain disorder, a substance addiction disorder, and obesity. (Tr. 21). At Step 3 the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or is medically equal to a listing-level impairment. (Tr. 23).

At Step 4 the ALJ assessed Plaintiff's Residual Functional Capacity (RFC) as follows:

> The claimant has the residual functional capacity to do a limited range of sedentary work subject to: (1) alternate sitting and standing as needed; (2) no repetitive twisting at the waist; (3) only occasional (repetitive) bending; (4) no work on uneven surfaces; (5) no climbing of ropes, ladders, or scaffold; (6) no exposure to vibrations; (7) no exposure to temperature extremes or humidity or hazards; and (8) simple one- or two-step tasks requiring little, if any, concentration. By definition, sedentary work ordinarily requires mostly sitting and the lifting of small amounts of weight up to 10 pounds.

(Tr. 23). This RFC assessment and the findings throughout the sequential evaluation, led the ALJ to conclude that Plaintiff was not under a disability and thus not eligible to receive DIB. (Tr. 18-27).

## IV.   JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389,

7

401 (1977)).  It consists of "'more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential not *de novo*.  *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record, if other substantial evidence supports the ALJ's findings.  *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, reviewing for substantial supporting evidence is not the stopping point of judicial analysis.  Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria.  *See Bowen*, 478 F.3d at 746.  If the ALJ does not, the decision may not be upheld even when substantial evidence supports the ALJ's findings.  *See id*.  For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right.  *See Bowen*, 478 F.3d at 746 (and cases cited therein).

## V.  DISCUSSION

### A.  <u>Medical Source Opinions</u>

#### 1.
#### <u>The Parties' Contentions</u>

Plaintiff contends that the ALJ erred by failing to evaluate Dr. Saleh's opinions as required by the Regulations. Plaintiff emphasizes that the ALJ never even mentioned the preference for a treating physician's opinions or the factors applicable to evaluating treating source opinions. Plaintiff further contends that Dr. Saleh's opinion deserved controlling or at least great weight because it was supported by objective clinical findings and diagnostic studies, was consistent with the remainder of the record, and was not contradicted by any examining medical source.

The Commissioner argues that the ALJ properly evaluated Dr. Saleh's opinions as required by the Regulations, reasonably declined to credit his opinions, and otherwise relied on substantial evidence, particularly Dr. Hutson's opinions, in support of his RFC assessment.

#### 2.
#### <u>Applicable Legal Criteria</u>

ALJs are required to evaluate every medical opinion of record, regardless of its source. *See* 20 C.F.R. §404.1527(d). The required evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R.

9

§404.1527(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). When these requirements are not met, the treating physician rule does not apply. *Id.*

If the ALJ concludes that controlling weight is not warranted under the treating physician rule, the ALJ must continue weighing the treating source's opinion under the following factors: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (discussing §404.1527(d)).

As to non-treating medical sources, the ALJ must evaluate their opinions under the same regulatory factors that apply to treating medical sources – supportability, consistency, specialization, *etc*. The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see* also 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

### 3.
### Analysis

Plaintiff is correct to the extent he argues that the ALJ's decision did not separately describe the Regulation's general preference for the opinions of treating medical sources, *see* 20 C.F.R. §404.1527(d)(2), did not separately describe the treating physician rule, *see id.*, or the remaining regulatory factors, *see* 20 C.F.R. §404.1527(d)(3)-(5).  Yet, this did not constitute an error of law because the Regulations do not require ALJs to separately describe the legal criteria applicable to evaluation medical source opinions.  *See* 20 C.F.R. §404.1527.  And, none of the cases cited discussed above, *supra*, §V(A)(2), require such a separate discussion; instead they require judicial review to determine, in part, "if the Commissioner applied the correct legal criteria."  *See Bowen*, 478 F.3d at 746.  Yet, because the ALJ's decision lacked a separate description of the applicable legal criteria, the decision must be further studied to determine what legal standards, if any, he applied when evaluating the opinions of Dr. Saleh and Dr. Hutson.

The ALJ applied the correct legal criteria to the opinions of Dr. Saleh by finding her opinions unsupported by objective medical evidence and inconsistent with her own treatment notes and other substantial evidence.  *See* Tr. 25.  Although the ALJ could have certainly provided a more thorough explanation of the regulatory factors, his decision sufficiently reveals that he applied the correct legal criteria under the treating physician rule by considering whether objective medical evidence supported Dr. Saleh's opinions and whether those opinions were consistent with the other substantial evidence of record.

*See id*; *see also* 20 C.F.R. §404.1527(d)(2).  In addition, the ALJ's decision adequately considered the factors of supportability and consistency as required by the Regulations. *See* Tr. 25; *see also* 20 C.F.R. §404.1527(2)-(3).

The ALJ also applied the correct legal criteria when accepting the opinions of Dr. Hutson.  The ALJ did so by applying the specialization factor through his recognition that Dr. Hutson has "expertise as an orthopedic surgeon," (Tr. 25), and by applying the supportability and consistency factors – stating that his opinion "is entitled to substantial deference as it is compatible with the documented medical findings and treatment history."  (Tr. 24; *see* Tr. 21).

Next, substantial evidence supported the ALJ's application of the applicable regulatory factors to Dr. Saleh's opinions.  His treatment notes state that Plaintiff's medication was controlling his pain, and he was not experiencing side effects from the medications.  In October 2003 Dr. Saleh noted, "Medications are effective in controlling the pain and increasing functioning and quality of life."  (Tr. 157).  Dr. Saleh repeated this note on many occasions.  *See* Tr. 158-59; 227, 229-41.  Substantial evidence also supported the ALJ's finding that the record lacked objective medical evidence documenting or supporting Dr. Saleh's opinions concerning Plaintiff's work limitations. This substantial evidence consisted of Dr. Hutson's testimony that Dr. Saleh's opinions about Plaintiff's work limitations were not supported by objective medical evidence.  *See* Tr. 329.  Substantial evidence also supported Dr. Hutson's opinions about the objective evidence as detailed by the Commissioner in his Memorandum.  *See* Doc. #7 at 13-14

( and evidence cited therein). To the extent that Plaintiff relies on other contrary evidence, *see* Doc. #6 at 12-17; Doc. #8 at 1-2, the presence of such evidence in the record does not support Plaintiff's challenges to the ALJ's decision. "Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her*, 203 F.3d at 389-90.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source opinions lack merit.

**B.** **Step 5 of the Sequential Evaluation**

Plaintiff contends that the ALJ erred at Step 5 of the sequential analysis by relying on the vocational expert's (VE's) testimony. Plaintiff reasons that the VE's testimony contained a conflict with the Dictionary of Occupational Titles, and consequently, Social Security Ruling 00-4p required the ALJ to elicit a reasonable explanation from the VE "in order to resolve the conflict." (Doc. #6 at 18). Plaintiff describes the following conflict: on one hand, the VE identified two jobs – final assembler and addresser – that Plaintiff could perform despite his impairments and work limitations; but on the other hand, Plaintiff could not perform the job of an addresser because he could not perform work demanding more than one-to-two step instructions, as the ALJ recognized. In other words, the unresolved conflict in VE's testimony makes it unreliable and deprives it of substantial-evidence status, particularly since removing the addresser job from consideration would significantly erode the sedentary occupational base. Plaintiff's

contentions lack merit.

Social Security Ruling 00-4p requires an ALJ to obtain a reasonable clarification of conflicts between a VE's testimony and information in the Dictionary of Occupational Titles. *See* Social Security Ruling 00-4p, 2000 WL 1898704 at *1 (2000). The need for clarification arises "[w]hen there is an apparent unresolved..." conflict. *Id*. at *2. Ruling 00-4p mandates the ALJ to "inquire, on the record, as to whether or not there is such consistency." *Id*.

During Plaintiff's administrative hearing, the ALJ reasonably inquired into the possible existence of such a conflict during his questioning of the VE about this. (Tr. 338). The VE testified that the jobs he identified at the sedentary level involved one limitation – the need for "alternating sitting and standing" – that is not included in the Dictionary of Occupational Titles. *Id*. The VE further testified, "However, I can say based on my experience of viewing these jobs that the ones I gave you accommodate that restriction." (Tr. 338). In light of this, the VE did not identify the conflict presently asserted by Plaintiff – his need for a job limited to one-to-two step instructions. But, Plaintiff, moreover, did not ask the VE about this potential conflict or otherwise alert the ALJ to the potential conflict. The VE's no-conflict testimony was therefore uncontradicted and left the evidence before the ALJ without any further need under Ruling 00-4p to seek a clarification from the VE. *See Martin v. Commissioner of Social Security*, 170 Fed.Appx. 369, 374, 2006 WL 509393 at **5 (6th Cir. 2006)("Because Martin did not bring the conflict to the attention of the ALJ, the ALJ did not need to

14

explain how the conflict was resolved. Here, the ALJ specifically asked if there was a conflict and the uncontradicted testimony of the vocational expert indicated that no conflict existed."); *see also* Tr. 27, 338-40.

Accordingly, substantial evidence supported the ALJ's findings at Step 5 of the sequential evaluation.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be affirmed; and

2. The case be terminated on the docket of this Court.


March 5, 2008                                             s/Sharon L. Ovington
                                                        Sharon L. Ovington
                                                   United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).